IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **BLAZINE MONACO,** <br> 18 W. Bel Meadow Lane <br> Chagrin Falls, OH 44022 <br><br> **On her own behalf and for all others similarly situated,** <br><br> Plaintiffs, <br><br> vs. <br><br> **WV PARKWAYS AUTHORITY** <br> 3310 Piedmont Road <br> Charleston, WV 25306 <br><br> Defendant. | CASE NO.   2:20-cv-00517 <br><br> JUDGE <br><br><br> **COMPLAINT FOR CLASS ACTION** |

Now comes Plaintiff, individually and as a representative of all others similarly situated, and for the Class Action Complaint states the following:

## INTRODUCTION

1. The West Virginia Parkways Authority ("the WVPA" or the "Authority") has been unjustly enriched by collecting administrative fees and notice fees not permitted by any statute, regulation, or rule.

2. In 2014, the West Virginia Legislature authorized the WVPA, after required rulemaking, to collect a "reasonable administrative fee" in connection with collecting unpaid tolls. W. Va. Code § 17-16D-5(f).

3. Per W. Va. Code § 17-16D-5(f), the amount of the administrative fee was required to be set by a "rule promulgated" by the WVPA.

4. To date, no such rule has been promulgated.

1

5. In direct violation of this requirement, and without proper legal authority to do so, the WVPA has charged and collected administrative fees (at amounts of $5, $30 and $150) in connection with unpaid tolls.

6. The WVPA has also charged and collected "notice fees" in connection with unpaid tolls, which were likewise not provided for by any rule.

7. A government is not allowed to take money from citizens in the absence of statute, regulation, or rule permitting it to do so.

8. Because of this, the WVPA has been unjustly enriched by collecting and retaining the administrative fees and notice fees in violation of law.

## **PARTIES, JURISDICTION, AND VENUE**

9. Plaintiff Blazine Monaco (hereinafter "Plaintiff") is a resident of Chagrin Falls, Ohio.

10. Defendant WVPA is headquartered in Kanawha County, West Virginia.

11. The Court has personal jurisdiction over Defendant under 28 U.S.C. 1332 because it is a citizen of the State of West Virginia with its principle office located in Kanawha County, which is within this Court's jurisdiction.

12. This Court has original subject matter jurisdiction over this matter under 28 U.S.C. 1332 because

   a. the matter in controversy exceeds the sum of five million dollars ($5,000,000) (exclusive of interest and costs);

   b. there is minimum diversity between Plaintiff, the putative class members, and Defendant; and

    c.   less than one-third of the members of the putative class in the aggregate are citizens of West Virginia. See Exhibit A attached.

13. Venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred here, and Defendant's principal office is located in Kanawha County, which is within this Court's territorial jurisdiction.

14. The Defendant does not have immunity pursuant to the 11th Amendment from suits in federal court, so this claim is properly in front of this Court.

15. The WVPA receives NO funding from the State of West Virginia.

16. Specifically, the WVPA document, "Financial and Toll Information", available on the WVPA's website[1], confirms that: "The West Virginia Turnpike receives no funding from the State of West Virginia…" See Exhibit A attached.

17. Additionally, in its "Comprehensive Annual Financial Report", available on the WVPA's website[2], the Director of Finance for the WVPA states:

> Pursuant to Senate Bill 427, the Authority's legal name was changed to the West Virginia Parkways Authority effective July 1, 2010. The West Virginia Parkways Economic Development and Tourism Authority was created as the successor-in-interest to the West Virginia Turnpike Commission (the Turnpike Commission) by an Act (the Act) of the West Virginia Legislature effective June 1, 1989. All the duties, powers, and functions of the Turnpike Commission were transferred to the Authority. Under the Act, the Authority assumed all assets, property, obligations, indebtedness, and other liabilities of the Turnpike Commission and personnel of the Turnpike Commission were transferred to the employment of the Authority. ***The Authority has the power to enact and amend its operating budget, and receives no appropriations from the State of West Virginia (the State).***

(emphasis added).

---

[1] Available at https://transportation.wv.gov/Turnpike/about/Documents/FINANCIAL%20AND%20TOLL%20INFORMATION0001.pdf (last visited June 3, 2020)

[2] Available at https://transportation.wv.gov/Turnpike/about/Documents/2016%20CAFR.pdf (last visited June 3, 2020).

18. The WVPA raises money via tolls and bonds in order to maintain financial independence of the State of West Virginia.

19. The State of West Virginia is not financially accountable for the WVPA.

20. The enacting statute for the WVPA states that the WVPA is "authorized and empowered:…(4) to sue and be sued in its own name, plead and be impleaded…" W. Va. Code, § 17-16A-6(a)(4).

## FACTS

21. The WVPA was created by the West Virginia Legislature in 1989 as a successor to the West Virginia Turnpike Commission to, among other things, operate and maintain the West Virginia Turnpike, an 88-mile tolled stretch of Interstate 77 from Charleston to Princeton.

22. The West Virginia Legislature adopted the Electronic Toll Collections Act (the "Act"), which is codified at W. Va. Code, §17-16D and governs the WVPA's collection of tolls and assessment of administrative fees on the West Virginia Turnpike.

23. Under the Act, when an individual fails to pay a toll, "the Authority shall assess a reasonable administrative fee, in the amount determined *by rule promulgated by the Authority* for each notification and for each separate violation of [the toll payment]." W. Va. Code §17-16D-5(f) (emphasis added).

24. In violation of this statute, the WVPA failed to promulgate any rule determining the amount of the administrative fee.

25. Specifically, the WVPA imposes a $5.00 administrative fee if drivers pay their toll within 15 days, a $30.00 administrative fee if drivers pay their toll within 25 days, and a $105.00 administrative fee if drivers pay their toll after 25 days.

26. All administrative fees, whether $5, $30, or $105, are unlawful for having been assessed without the rulemaking required by law.

27. Additionally, Defendant also collects a "notice fee" of $10.00.

28. That "notice fee" is not authorized by the statute and is unlawful.

29. On or about September 7, 2018, and September 9, 2018, Plaintiff drove through the State of West Virginia and on four occasions encountered cash only toll booths on the West Virginia Turnpike.

30. Plaintiff did not have cash and was unable to use a debit/credit card because electronic forms of payment were not accepted at the toll booths.

31. On or about October 25, 2018, Defendant issued an Unpaid Toll Violation Notice ("Notice") to Plaintiff. See Exhibit B, attached.

32. The Notice threatens that "failure to pay the required toll or related charges may result in a misdemeanor."

33. The Notice also fails to contain the due process information required by W. Va. Code, Section 17-16D-5(a)(1).

34. The Notice informed Plaintiff that she owed a total of $8 in tolls for four unpaid tolls of $2 each.

35. The Notice also informed Plaintiff that she was assessed a total of $120 in related charges of administrative fees (four administrative fees of $30 each).

36. The WVPA also assessed Plaintiff an additional $10.00 "notice fee".

37. Not willing to subject herself to a criminal matter of a misdemeanor, Plaintiff paid the $8 in tolls, the $120 in administrative fees, and the $10 notice fee.

38. Defendant has been unjustly enriched by collecting $120 in administrative fees from Plaintiff when those fees are not authorized by rule as required by law.

39. Defendant has also been unjustly enriched by collecting the $10 "notice fee" from Plaintiff when that fee is not authorized by rule as required by law.

## CLASS ALLEGATIONS

40. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

41. Plaintiff brings this action on behalf of herself and for all other persons similarly situated ("class members") who, during the class period, were assessed administrative and/or notice fees by Defendant as a result of unpaid tolls.

42. This class numbers over 100 persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

43. The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the entire class as a whole. Those common questions include, and are not limited to:

   (a) Whether the administrative fees assessed by Defendant were set by a rule promulgated by Defendant as required by W. Va. Code, §17-16D-5(f);

   (b) Whether Defendant was permitted to assess administrative fees without promulgating a rule setting the amount of those fees;

   (c) Whether Defendant was permitted to assess a "notice fee."

44. Defendant has engaged in the same conduct regarding all class members.

45. The claims, defenses, and injuries of the representative Plaintiff are typical of the claims, defenses and injuries of the entire class, and the claims, defenses and injuries of each class member are typical of those of the entire class.

46. Representative Plaintiff will fully and adequately protect and represent the entire class, and all of the class members.

47. The identity of the class members cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant.

48. The prosecution of separate actions by each class member would create a substantial risk of inconsistent or varying adjudications with regard to individual class members that would establish incompatible standards of conduct for Defendant.

49. The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual class members which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Further, the maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

## FIRST CLAIM FOR RELIEF
### Unjust Enrichment

50. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

51. Plaintiff and class members conferred a benefit on Defendant by paying administrative fees.

52. Defendant knew that Plaintiff and the class members paid administrative fees.

53. Defendant accepted the administrative fees.

54. Defendant has not returned the administrative fees.

55. Defendant was required to set administrative fees by promulgating a rule, but did not do so.

56. The balance of the equities favors Plaintiff and class members because Defendant had no authority to collect administrative fees without promulgating a rule setting the amount of those fees.

57. Defendant knew that Plaintiff and the class members paid notice fees.

58. Defendant accepted the notice fees.

59. Defendant has not returned the notice fees.

60. The balance of the equities favors Plaintiff and class members because Defendant had no legal authority to collect notice fees.

61. Defendant was unjustly enriched at the expense of Plaintiff and class members in the collection of the monies described above, and it would be contrary to equity and good conscience for Defendant to retain those monies under these unreasonable, unfair, and unjust circumstances.

62. As a direct and proximate result of the foregoing, Plaintiff and the putative class members demand equitable relief in the form of restitution of the administrative fees and notice fees that were collected, as well as any other relief permitted by equity against Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff demands judgment as follows:

1. For an Order determining at the earliest possible time that this matter may proceed as a class action under Fed. R. C. P. 23 and certifying this case as such;

2. For a judgment against Defendant for and for disgorgement of all monies collected as the administrative fees and notice fees describes above;

3. And for such other or further relief in equity to which the court finds Plaintiff and the class entitled.

Respectfully submitted,

*s/Stephen G. Skinner*
Stephen G. Skinner, Esq. (WVSB 6725)
**Skinner Law Firm**
115 E. Washington Street
Charles Town, WV 25414
(304) 725-7029
Email: *sskinner@skinnerfirm.com*

Co-Counsel for Plaintiffs


Nicole T. Fiorelli, Esq. (OH #0079204)
(pro hac vice application to be filed)
Patrick J. Perotti, Esq. (OH #0005481)
(pro hac vice application to be filed)
Frank A. Bartela, Esq. (OH #0088128)
(pro hac vice application to be filed)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 | (440) 352-3469 Fax
Email: nfiorelli@dworkenlaw.com
          pperotti@dworkenlaw.com
          fbartela@dworkenlaw.com

Counsel for Plaintiffs