IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BLAZINE MONACO

          Plaintiff,

v.                                          CIVIL ACTION NO. 2:20-cv-00517

WV PARKWAYS AUTHORITY,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant West Virginia Parkways Authority's Motion to Dismiss. [ECF No. 17]. Parties have responded, [ECF No. 23], and replied, [ECF No. 28]. Parties have also submitted supplemental briefs as directed by the court. [ECF Nos. 36, 37]. This motion is ripe for decision.

I.    Background

In September 2018, Plaintiff Blazine Monaco "drove through the state of West Virginia and on four occasions encountered cash only toll booths on the West Virginia Turnpike." [ECF No. 1, at 5]. "Plaintiff did not have cash and was unable to use a debit/credit card" to make payment at the toll booths. *Id.* Plaintiff then received an "Unpaid Toll Violation Notice." *Id.* Plaintiff was assessed $8 in unpaid tolls, $120 in administrative fees, and a $10 notice fee. *Id.* Plaintiff paid all three of the fees. *Id.*

Plaintiff then brought this action on behalf of herself and as a representative of all others similarly situated, alleging that the Parkways Authority "has been unjustly enriched by collecting administrative fees and notice fees not permitted by any statute, regulation, or rule." Specifically, Plaintiff alleges that the Parkways

Authority unlawfully imposes a $5.00 administrative fee if drivers pay their toll within 15 days, a $30.00 administrative fee if drivers pay their toll within 25 days, and a $105.00 administrative fee if drivers pay their toll after 25 days." [ECF No. 1, at 4.]. In addition, Plaintiff alleges that the $10.00 notice fee is unlawful. Plaintiff argues that these administrative and notice fees constitute an unjust enrichment on behalf of the Parkways Authority.

The West Virginia Parkways Authority filed this Motion to Dismiss asserting five grounds for dismissal: 1) Plaintiff failed to comply with the notice requirement set forth in W. Va. Code § 55-17-3(a)(1); 2) this suit is barred by the Eleventh Amendment to the Constitution of the United States; 3) this suit is barred by Article VI, § 35 of the Constitution of West Virginia; 4) Plaintiff has failed to state a claim because the Parkways Authority is authorized to fix and collect these fees by statute; and 5) Plaintiff has failed to exhaust her administrative remedies. For the reasons stated below, the Parkways Authority's Motion to Dismiss is **GRANTED**.

## II. The Parkways Authority

The Parkways Authority was created by the West Virginia Legislature in 1989 as a successor to the West Virginia Turnpike Commission. It is charged with, among other things, operating the West Virginia Turnpike, an 88-mile stretch of Interstate 77 between Charleston and Princeton, West Virginia.

The Parkways Authority is governed by Chapter 17, Article 16A of the West Virginia Code. The Parkways Authority is empowered to do a number of things including issuing bonds and acquiring property. The Parkways Authority is authorized to "to charge, fix and revise, from time to time, tolls or fees for transit over each parkway project constructed or improved or financed by it . . . ." W. Va. Code

§ 17-16A-6(8). The Parkways Authority funds its projects and operations by issuing revenue bonds and charging tolls, rents, and fees. W. Va. Code §§ 17-16A-6, -10, -11a, -12, -13.

The West Virginia Legislature passed the Electronic Toll Collection Act in 2014. W. Va. Code § 17-16D-1, *et seq*. The Electronic Toll Collection Act was passed to make "toll roads, highways and bridges in this state safer and collection of tolls more efficient" through "the use of electronic and video technology for collection of tolls on roads, highways and bridges." W. Va. Code § 17-16D-1.

### III. Legal Standard

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required;

3

labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## IV. Discussion

### a. Does W. Va. Code § 55-17-3(a)(1) require dismissal of this case?

First, the Parkways Authority argues that this case must be dismissed because Plaintiff failed to provide the Parkways Authority with 30-days' notice before commencing this action. Section 55-17-3(a)(1) of the West Virginia Code states that "at least thirty days prior to the institution of an action against a government agency, the complaining party or parties must provide the chief officer of that government agency and the Attorney General written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired." The Parkways Authority asserts that this court lacks subject matter jurisdiction because "[c]ompliance with

the pre-suit notification provisions set forth in W. Va. Code § 55-17-3(a) is a jurisdictional prerequisite for filing an action against a State agency." [ECF No. 17, at 5] (quoting Syl. Pt. 3, *Motto v. CSX Transp., Inc.*, 647 S.E.2d 848 (W. Va. 2007)). "However, West Virginia's notice-of-claim law does not apply to suits filed in federal court." *Durstein v. Alexander*, No. 3:19-cv-0029, 2019 WL 6833858, at *6 (S.D. W. Va. Dec. 13, 2019) (Chambers, J.) (citing *Smith v. Allred*, No. 15-cv-06026, 2016 WL 3094008, at *7 (S.D. W. Va. June 1, 2016) (Copenhaver, J.)). Therefore, the Parkways Authority's Motion to Dismiss on this ground is **DENIED**.

### b. Is the Parkways Authority immune from suit under the Eleventh Amendment?

Second, the Parkways Authority argues that this case must be dismissed because it is immune from suit under the Eleventh Amendment. The Eleventh Amendment provides that the "Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court of the United States has interpreted the amendment to apply to a suit by a citizen of a state against that state. *Hans v. Louisiana*, 134 U.S. 1 (1890). Further, the Eleventh Amendment prohibits naming an arm of the state as a defendant. *See Westinghouse Elec. Corp. v. West Virginia Dep't of Highways*, 845 F.2d 468, 469 (4th Cir. 1988). The Amendment applies to state law and federal claims. *Id.*

The "Supreme Court identified six factors considered useful in determining whether an entity qualifies as an arm of the state: (1) the characterization of the entity by the language of its creating statutes; (2) the origin of the entity's funding;

5

(3) whether the state is financially responsible for the liabilities and obligations incurred by the entity; (4) the source of the power to appoint the entity's officers or members; (5) whether the function performed by the entity is traditionally state or municipal; and (6) whether the entity's actions are subject to a veto by the state." *Ristow v. South Carolina Port Authority*, 58 F.3d 1051, 1052 (4th Cir. 1995) (citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)). "[O]ne factor dominates the inquiry—whether the state treasury is 'obligated' for 'the losses and debts' of the entity under scrutiny." *Id.* "The proper focus is not on the use of profits or surplus, but rather is on losses and debts. If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'No'—both legally and practically—then the Eleventh Amendment's core concern is not implicated." *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994).

The Parkways Authority argues that it is an arm of the state because it was created as a state agency, serves public purposes and governmental functions, is comprised of executives of the state government, is subject to the West Virginia Government Proceedings Act, can acquire property in the name of the state, and can condemn property for public use. [ECF No. 17, at 5–8]. Plaintiff focuses her argument on the fact that the Parkways Authority receives no appropriations from the state, is financially independent through the issuing of bonds and collecting of tolls, and that the State of West Virginia is not financially accountable for the Parkways Authority's debts.

Plaintiff is correct. It is true that some of the factors outlined in *Lake* do point to the Parkways Authority having immunity under the Eleventh Amendment—it is,

6

by statute, an agency of the state; maintaining the turnpike is a governmental function; and it is composed of state officers like the Governor. But it is independently funded, there is no veto power from the state, and the debts of the Parkways Authority are not that of the state. Because this is the most salient factor in the test for Eleventh Amendment Immunity, *Ristow*, 58 F.3d at 1052, it is clear that a suit against the Parkways Authority does not implicate the Eleventh Amendment and is not shielded by immunity. *Accord Guaranty Trust Co. of N.Y. v. West Virginia Turnpike Commission*, 109 F. Supp. 286, 293 (S.D. W. Va. 1952) (Moore, J.) (finding that the West Virginia Turnpike Commission did not have immunity under the Eleventh Amendment). Other Circuits have agreed when assessing whether toll road operators that do not receive state funds are entitled to Eleventh Amendment immunity. *American Trucking Associations v. New York State Thruway Authority*, 795 F.3d 351 (2d Cir. 2015); *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140 (3d Cir. 1995); *Miller-Davis Co. v. Illinois State Toll Highway Auth.*, 567 F.2d 323 (7th Cir. 1977). The Parkways Authority's Motion to Dismiss on this ground is **DENIED**.

    c. **Is the Parkways Authority immune from suit under the West Virginia Constitution?**

The Parkways Authority further asserts that it is immune from Plaintiff's suit under Article VI, § 35 of the West Virginia Constitution. Section 35 provides that the "State of West Virginia shall never be made defendant in any court of law or equity, except the state of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

7

W. Va. Const. art. VI, § 35. State officers and agencies can invoke immunity to bar suit. *See, e.g.*, Syl. Pt. 2, *Skaff v. Pridemore*, 490 S.E.2d 787 (W. Va. 1997) ("Article VI, § 35 applies to and protects state agencies and officials when engaged in the performance of governmental functions, and cannot be circumvented by making an agency or official of the state the defendant."). When the remedy sought against the state does not require the expenditure of state funds, sovereign immunity is not triggered. *See W. Va. Lottery v. A-1 Amusement, Inc.*, 807 S.E.2d 760 (W. Va. 2017). Also, if a plaintiff does not seek to recover state funds but would be recovering "under and up to" the limits of the state's liability insurance coverage, sovereign immunity is not a bar to recovery. *See* Syl Pt. 2, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 310 S.E.2d 675 (W. Va. 1983).

The sovereign immunity of the Parkways Authority's predecessor, the Turnpike Commission, was addressed in *Hope Natural Gas Co. v. West Virginia Tpk. Comm'n*, 143 W. Va. 913 (1958) and *Guaranty Trust Co. of N.Y. v. West Virginia Tpk. Comm'n*, 144 W. Va. 266 (1959). Both cases determined that the Turnpike Commission—as it existed then—was not entitled to sovereign immunity under the West Virginia Constitution. The Parkways Authority argues that these cases are not binding because the Turnpike Commission is a different entity than the Parkways Authority. While there is truth to this statement, I believe that *Hope* and *Guaranty Trust* would reach the same conclusion today if examining the Parkways Authority.

*Hope* made it clear that the "factor entitled to the most weight, in our opinion, is that under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the commission." *Hope*, 143 W. Va. at 929 (quoting *People v. Illinois State Toll Highway Commission*, 3 Ill.2d 218 (1954)). What this court found

8

about the Turnpike Commission in 1952 in *Guaranty Trust Co. of N.Y. v. West Virginia Tpk. Comm'n*, 109 F. Supp. 286 (S.D. W. Va. 1952) (Moore, J.), applies to the Parkways Authority as well. The Parkways Authority "was given no power to incur any liability on behalf of the State. No funds of the State are used by the [Parkways Authority] for any purpose. The bonds are not a pledge of the faith and credit of the State, but are payable exclusively from revenue produced from the operation of the turnpike." *Id.* at 292–93. The Parkways Authority, like the Turnpike Commission before it, is not immune from suit under the West Virginia Constitution. The Parkways Authority's Motion to Dismiss on this ground is **DENIED**.

### d. Has Plaintiff failed to state a claim for unjust enrichment?

The Parkways Authority then argues that Plaintiff has failed to state a claim for unjust enrichment because it is authorized to charge and collect the fees in question. The elements of a claim for unjust enrichment under West Virginia law are: "(1) a benefit conferred upon the defendant, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as make it inequitable for the defendant to retain the benefit without payment of its values." *CSS, Inc. v. Herrington*, 306 F. Supp. 3d 857, 881–82 (S.D. W. Va. 2018). West Virginia specifically requires that the benefits were "received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor." *See Realmark Devs., Inc. v. Ranson,* 208 W.Va. 717, 542 S.E.2d 880, 884–85 (2000) (citing *Copley v. Mingo Cnty. Bd. of Educ.,* 195 W.Va. 480, 466 S.E.2d 139 (1995)). A claim for unjust enrichment will be dismissed if it does not state a plausible claim for how the retention of the benefit is unjust. *See Employer Teamsters – Local Nos.*

9

*175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 472 (S.D. W. Va. 2013) (Chambers, J.) (dismissing a claim for unjust enrichment for a failure to plausibly state how a benefit was unjustly or inequitably retained).

Plaintiff's argument is that the administrative and notice fees paid by Plaintiff to the Parkways Authority were a "benefit conferred upon the defendant" and that it would be unjust and inequitable for the Parkways Authority to retain these fees because it did not have the authority to collect them. The Parkways Authority argues that because the Parkways Authority is authorized by statute to collect administrative and notice fees, Plaintiff has failed to allege a claim for unjust enrichment under West Virginia law. For Plaintiff's claim to survive, Plaintiff must make a clear and plain statement of why it is inequitable. *CSS, Inc.*, 306 F. Supp. 3d at 882.

Whether Plaintiff has properly alleged a claim of unjust enrichment comes down to one question: is the Parkways Authority authorized to collect the administrative and notice fees that it includes with notices of failure to pay a toll? This is a question of law; I need not accept Plaintiff's conclusions. If the Parkways Authority is permitted to collect these fees as a matter of law, then Plaintiff has failed to state a plausible claim upon which relief can be granted.

Whether the Parkways Authority is permitted to collect the administrative and notice fees depends on the interaction between three different sections of the West Virginia Code: The Parkways Authority Establishing Act, W. Va. Code § 17-16A-1, et seq.; the Electronic Toll Collection Act, W. Va. Code § 17-16D-1, et seq.; and the West Virginia Administrative Procedure Act, W. Va. Code § 29A-1-1, et seq. Deciding this issue requires a thorough understanding of all three.

### i. The Parkways Authority Establishing Act

The Parkways Authority and its powers are based in Chapter 17, Article 16A of the West Virginia Code. The Parkways Authority is empowered to "charge, fix and revise, from time to time, tolls or fees for transit over each parkway project . . . . Provided, That the Parkways Authority may not charge tolls or fees for transit over an existing road without express legislative authorization for the charging of such tolls or fees: Provided, however, That an existing road does not include the West Virginia Turnpike . . . ." § 17-16A-6(a)(8).

The section continues to say "The Parkways Authority is hereby authorized to fix, revise, charge and collect tolls and fees for the use of each parkway project and the different parts or sections thereof . . . . Provided that the Parkways Authority may not charge tolls or fees for transit over an existing road without express legislative authorization for the charging of such tolls or fees: Provided, however, That an existing road does not include the West Virginia Turnpike . . . ." § 17-16A-13(a).

"Nothing in this section shall be construed to permit or authorize the Parkways Authority to charge tolls or fees on any existing road without express legislative authorization for the charging of such tolls or fees: Provided, That an existing road does not include the West Virginia Turnpike . . . ." § 17-16A-13a(f). "Whoever shall knowingly or intentionally defraud or attempt to defraud the Parkways Authority . . . in regard to the payment of tolls, rents, fees or charges established by the parkways authority for the use of any such project or evade . . . . the payment of such toll, rent, fee or charge . . . shall be guilty of a misdemeanor." § 17-16A-17. The Parkways Authority is further authorized to "create a discount program for purchasers of West Virginia EZ Pass Transponders" after providing public notice and holding a public

meeting. § 17-16A-29.

### ii. The Electronic Toll Collection Act

In 2014, the West Virginia Legislature found that "the use of electronic and video technology for collection of tolls on roads, highways and bridges will benefit the citizens of this state by making toll roads, highways and bridges in this state safer and collection of tolls more efficient, by easing traffic congestion, by improving traffic flow, by furthering economic development and by promoting and enhancing more efficient commercial traffic and the shipment of goods in the state." W. Va. Code § 17-16D-1. Electronic toll collection "means a system of collecting tolls or charges that has or includes the capability of charging an account holder, owner or operator of a vehicle for the prescribed toll: (A) by electronic transmission of information between a device on a vehicle and a device located in a toll lane or otherwise used at a toll collection facility; or (B) by means of a video collection system." § 17-16D-2(3).

The Electronic Toll Collection Act provides that "the collection and enforcement of tolls for the use of roads, highways and bridges may be accomplished by electronic toll collection as provided in this article and in rules promulgated by the authority of this article." § 17-16D-3. When collecting for an unpaid toll, "in addition to the amount of any unpaid tolls, the Parkways Authority shall assess a reasonable administrative fee, in the amount determined by rule promulgated by the Authority, for each notification for each separate violation of this article." § 17-16D-5(f). A failure to remit the unpaid toll or assessed administrative fees results in the entry of an administrative default judgment. § 17-16D-5(g).

The Electronic Toll Collection Act ends with requiring the Parkways Authority to "propose rules for legislative approval in accordance with the provisions of [the

12

West Virginia Administrative Procedures Act] to implement this article." § 17-16D-14.

### iii. The West Virginia Administrative Procedures Act

The West Virginia Administrative Procedures Act begins by clarifying that "except to the extent exempted by the provisions of this chapter or other applicable law, and except as provided for in article three-a of this chapter, every rule and regulation (including any amendment of or rule to repeal any other rule) shall be promulgated by an agency only in accordance with this article and shall be and remain effective only to the extent that it has been or is promulgated in accordance with this article." § 29A-3-1. "No executive or administrative agency shall be deemed to have power and authority to promulgate a legislative rule without compliance with this article unless: (1) The provisions of this code . . . expressly exempts its exercise from legislative rule-making review prior to promulgation or (2) the grant of such power and authority is exempted from the application of the [Administrative Procedures Act]." § 29A-3-2(b).

A legislative rule is any rule promulgated after or pursuant to authorization of the Legislature, that has: (1) the force of law; or (2) supplies a basis for the imposition of civil or criminal liability; or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting constitutional, statutory or common law rights, privileges or interest is a legislative rule." § 29A-1-2(e). A legislative exempt rule is "every rule promulgated by an agency or relating to a subject matter that is exempt from the rule-making provisions of [the Administrative Procedures Act.] § 29A-1-2(d). "When an agency proposes a legislative exempt rule, procedural rule, or interpretive rule, the agency shall file in the State Register a

notice of its action, including the text of the proposed rule." But a "legislative exempt, procedural or interpretive rule is not void or voidable by virtue of noncompliance with this subsection." § 29A-3-4.

The Legislature granting authority to an agency to determine something does not automatically exempt it from the legislative rule-making process. *W. Va. Chiropractic Society, Inc. v. Merritt*, 178 W. Va. 173, 179 (1987). The Supreme Court of Appeals of West Virginia has "denounced the practice of enacting legislative rules without complying with the procedures of the State Administrative Procedures Act," and has found rules invalid for failing to comply with the requirement that legislative rules be submitted to the Legislature for approval. *Swiger v. UGI/American Gas, Inc.*, 216 W. Va. 756, 760 (2005).

### iv. Is the Parkways Authority required to comply with the Administrative Procedures Act to assess and collect administrative and notice fees for travel over the turnpike?

It is not contested that the Parkways Authority never submitted the notice and administrative fees to the Legislature for approval, so the only remaining question is whether the promulgating of these fees is exempted from the requirements of the West Virginia Administrative Procedures Act. If it is exempt, then Plaintiff's claim for unjust enrichment must fail. If it is not exempt, then the Parkways Authority's motion to dismiss on this ground must be denied.

Plaintiff contends that the Parkways Authority is not exempt from Administrative Procedures Act requirements for two reasons. First, she offers that if the fees in question were promulgated via the Electronic Toll Collection Act, and that this Act specifically states that the Parkways Authority must "propose rules for

14

legislative approval in accordance with the provisions of [the State Administrative Procedures Act] to implement this article." § 17-16D-14. Second, she offers that if the fees in question were promulgated under the Parkways Authority Establishing Act, there are no exemptions that apply, and therefore, the Parkways Authority was required to submit the legislative rules to the West Virginia Legislature for approval.

The Parkways Authority contends that the Electronic Toll Collection Act is inapplicable to the facts of this case because Plaintiff drove through a Cash Only lane at the Toll Collection Barriers. It then contends that the Legislature granted the Parkways Authority "informal rulemaking authority" and that legislative approval is only required where specifically called for, such as in § 17-16A-6(16) where the Legislature specifically requires legislative approval if the Parkways Authority seeks to implement a single fee program. § 16-16A-6(16) ("The Parkways Authority, in consultation with the Division of Motor Vehicles, shall propose rules for legislative approval in accordance with the provisions of article three, chapter twenty-nine-a of this code to implement any single fee program under this subdivision (16)").

Therefore, the Parkways Authority argues it was not required to seek legislative approval for the fees in question. And if it was permitted to assess these fees, then Plaintiff's claim of unjust enrichment must fail. I agree with the Parkways Authority's ultimate conclusion, but its reasoning is flawed.

First, the Electronic Toll Collection Act is clearly implicated here. It is of no consequence that Plaintiff drove through a Cash Only lane when Cash Only is a misnomer. As the Parkways Authority itself advertises on its website, "ALL 38 toll lanes on the West Virginia Turnpike have electronic toll collection capabilities with antennas and readers for the transponder system. Every lane (with the exception of

15

an "E-ZPass® Only" dedicated lane . . .) has the dual function of accepting transponders AND cash transactions." *General Information*, West Virginia Parkways Authority, https://transportation.wv.gov/Turnpike/EZPass/FAQ/Pages/General-Information.aspx (last visited Dec. 12, 2020).

Second, the Parkways Authority's assertion that it need only comply with the Administrative Procedures Act when explicitly directed to by statute is in direct contradiction to the law. When an agency implements a legislative rule, it must do so in compliance with the Administrative Procedures Act unless explicitly exempted from doing so. However, the Parkways Authority is correct that it is exempt from the legislative rulemaking process when implementing and collecting tolls and fees related to travel over the Turnpike.

The Parkways Authority Establishing Act clearly states that the Parkways Authority does not require legislative approval for the charging of tolls or fees for travel over the Turnpike. W. Va. Code § 17-16A-6(a)(8) ("the Parkways Authority may not charge tolls or fees for transit over an existing road without express legislative authorization for the charging of such tolls or fees: Provided, however, That an existing road does not include the West Virginia Turnpike . . . ."). This is restated in § 17-16A-13 where the Legislature established that the Parkways Authority can "fix, revise, charge and collect tolls and fees for the use of each parkway project and the different parts or sections thereof and to fix, revise, charge and collect rents, fees, charges and other revenues, of whatever kind or character . . . ." And, again, the Legislature clarifies that the Parkways Authority does not require legislative approval to charge tolls or fees for transit over the West Virginia Turnpike. *Id.* To

16

read this statute any other way would mean that the exemption for legislative approval of Turnpike tolls or fees has no meaning or consequence.

The argument that these fees would necessarily need to be promulgated under the Electronic Toll Collection Act gives rise to the same problem. Plaintiff asserts that only the Electronic Toll Collection Act specifically references the collection of unpaid tolls and therefore these fees must be promulgated according to the Administrative Procedures Act. It is correct that only the Electronic Toll Collection Act refers to these specific fees and says that those who fail to pay their toll will be subject to them, but the Legislature's grant of power to the Parkways Authority to actually fix and revise such fees lies in the Parkways Authority Establishing Act. §§ 17-16A-6(a)(8), 17-16A-13. To read the Electronic Toll Collection Act as requiring that administrative and notification fees be promulgated under it rather than the Parkways Authority Establishing Act would give the exemption from legislative rulemaking specifically granted to the Parkways Authority for Turnpike tolls and fees no meaning at all. At bottom, the Parkways Authority has the power to fix and revise these fees without legislative approval through the legislative rule making process.

### v. Has Plaintiff failed to state a plausible claim?

As discussed above, a plausible claim for unjust enrichment requires "(1) a benefit conferred upon the defendant, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as make it inequitable for the defendant to retain the benefit without payment of its value." *CSS, Inc.* 306 F. Supp. 3d at 881–82. Because I have found that, as a matter of law, the Parkways Authority is permitted to collect these administrative and notice fees, the Plaintiff has failed to state any

17

plausible claim that it would be "inequitable" or unjust for the Parkways Authority to retain the fees that have been collected. Because Plaintiff's unjust enrichment claim is fully dependent on the premise that the Parkways Authority was not authorized to collect the fees that it did, Plaintiff has failed to state a plausible claim for unjust enrichment under West Virginia law and her claim is **DISMISSED**.

### e. Has Plaintiff failed to exhaust her administrative remedies?

The Parkways Authority contends that even if Plaintiff had stated a cognizable legal claim, that Plaintiff failed to exhaust her administrative remedies. According to the Parkways Authority, Plaintiff ought to have not paid the late tolls, notice fees, and administrative fees and instead sought an administrative hearing under W. Va. Code § 17-16D-5(e) ("Persons receiving a notice of violation as provided in this section must respond within thirty days of the date the notice was mailed by: (1) Remitting the amount of the unpaid toll and any administrative fee assessed; or (2) Requesting an administrative hearing in accordance with rules promulgated by the Parkways Authority pursuant to this article."). Plaintiff counters that there are no administrative remedies available to her because there have been no procedures or rules promulgated under the Electronic Toll Collection Act regarding hearings to contest an unpaid toll violation.

Judge Copenhaver succinctly lays out the requirements of administrative exhaustion under West Virginia law in *Corbett v. Duerring*, 726 F. Supp. 2d 648, 653–56 (S. D. W. Va. 2010) (Copenhaver, J.). "In West Virginia, the general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative board, and such remedy must be exhausted before the courts will act." *Id.* at 653

18

(internal quotations removed). However, "West Virginia law does not require exhaustion of administrative remedies in instances 'where resort to the available administrative procedures would be an exercise in futility.'" *Id.* at 653 (quoting Syl. Pt. 2, *Kincell v. Superintendent of Marion County Schools*, 201 W. Va. 640, 499 S.E.2d 862, 864 (1997)). When a plaintiff objects to an agency's methods rather than to the agency action itself, she does not need to follow administrative appeal procedures if the appeal would not secure the desired relief. *Accord State ex rel. Bd. of Educ. of Kanawha County v. Casey,* 176 W.Va. 733, 349 S.E.2d 436, 439 (1986) (finding that it would have been futile for a teacher objecting to the method of a transfer from a closing school rather than to the school closure itself to seek administrative remedies). Further, if an agency fails to notify an aggrieved party of any administrative remedies, it cannot then, later argue that those remedies should have been utilized. *Beine v. Bd. of Educ. of Cabell County,* 181 W.Va. 669, 383 S.E.2d 851, 856 (1989) ("Since the Board did not extend to Beine his rights under the law governing education employees, they were not in a good position to later contend he should have made use of that procedure in complaining.").

Here, as in *Beine*, the Parkways Authority did not, in either the Unpaid Toll Invoice [ECF No. 1, Ex. A] or the Unpaid Toll Violation Notice [ECF No. 1, Ex. B] provide Plaintiff with an administrative remedy that may be pursued in lieu of making immediate payment. Because the Parkways Authority failed to notify Plaintiff of any available administrative remedy, it matters not whether the administrative remedy actually exists.

V.     **Conclusion**

While the Parkways Authority is not immune from suit under either the Eleventh Amendment of the United States Constitution or the West Virginia Constitution, it is permitted to establish tolls, administrative fees, and notice fees for travel over the Turnpike without complying with the legislative rule-making procedures of the State Administrative Procedures Act. Because Plaintiff has failed to state a plausible claim for unjust enrichment, Plaintiff's claim must be **DISMISSED**. The Parkways Authority's Motion to Dismiss [ECF No. 17] is **GRANTED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: February 2, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE